DCV
CAUSE NO. 07-CV-161177

| | | |
|---|---|---|
| RICHARD A. HAASE<br>AND AUDREY L. HAASE, | §<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§ | OF FORT BEND COUNTY, TEXAS |
| COUNTRYWIDE HOME<br>LOANS, INC., et al. | §<br>§<br>§ | |
| Defendant. | §<br>§ | 400th JUDICIAL DISTRICT |

**AFFIDAVIT OF** ⟨illegible⟩

THE COMMONWEALTH OF PENNSYLVANIA §
§
COUNTY OF ALLEGHENY §                                    ⟨illegible⟩

BEFORE ME, the undersigned authority, on this day personally appeared ⟨illegible⟩

known to me to be the person whose name is subscribed to this instrument, and having been duly

sworn, upon oath did depose and state as follows:

1.  My name is ⟨illegible⟩. I am over the age of eighteen (18) years and have
    never been convicted of a crime. I am fully competent and authorized in all
    respects to make the statements contained herein, all of which are based upon my
    review of Bank of America, N.A., ("Bank of America")'s business records unless
    otherwise indicated

2.  I am ⟨illegible⟩ for Bank of America. As such, I am a custodian of
    the records of Bank of America pertaining to the mortgage at issue in this matter.

3.  The documents attached hereto are true and correct copies of records that are kept
    by Bank of America in the ordinary course of business. It was in the regular
    course of business for an employee or representative of Bank of America who had
    knowledge of the act, event, condition, or opinion recorded, to transmit
    information to be included in such record. The record was made at or near the
    time of the act, event, condition, or opinion recorded or reasonably soon
    thereafter. The records attached hereto are exact duplicates of the originals.

4.  On or about June 5, 2006, Richard and Audrey Haase ("Plaintiffs") sought and
    obtained a home equity loan secured by the real property located at 4402 Ringrose
    Dr., Missouri City, Texas (the "Property"). Plaintiffs executed a promissory note
    (the "Note") payable to New Century Mortgage Corporation ("New Century") in

399724.2

EXHIBIT A

the original principal amount of $173,600. The Note is endorsed in blank by New Century.[1]

5.  In securing their obligations to New Century, Plaintiffs executed a Texas Home Equity Security Instrument (the "Security Instrument") which named New Century and any subsequent holder of the Note as the beneficiary of the Security Instrument (collectively, the Note and Security Instrument will be referred to as the "Loan").[2]

6.  In September 2006, the Loan was transferred to the Morgan Stanley ABS Capital I Inc. Trust 2006-HE6 Mortgage Pass-Through Certificates, Series 2006-HE6 of which Deutsche Bank National Trust Company ("Deutsche") is trustee. Effective December 1, 2006 Countrywide Home Loans, Inc. ("Countrywide") became the mortgage servicer for the Loan in place of New Century.[3]

7.  In November, 2007, Plaintiffs became delinquent on their obligation to repay the Loan. On December 3, 2007 Plaintiffs were sent written notice of default and notice that payment of the entire amount of the indebtedness would be accelerated if the default was not cured (the "Default Notice").[4] Plaintiffs failed to cure the default and repayment of the debt under the Note was accelerated. Plaintiffs were sent notice of the acceleration by letter dated May 5, 2008 (the Notice of Acceleration")[5].

8.  On June 16, 2008 an Assignment of the Note and Deed of Trust indicating the assignment of the Loan to Deutsche was filed in the real property records of Fort Bend County, Texas.[6]

9.  In July 2008 Countrywide's parent corporation, Countrywide Financial Corporation was acquired by Bank of America Corporation, the parent company of Bank of America, N.A. After July 2008, the mortgage servicer for the Loan was BAC Home Loans Servicing, L.P.("BAC") Effective July 1, 2011, BAC was merged into Bank of America. Thereafter, Bank of America became the mortgage servicer for the Loan and remains as the mortgage servicer for the Loan.[7]

---

[1]  A true and correct copy of the Note is attached as Exhibit "A-1".

[2]  A true and correct copy of the Security Instrument is attached as Exhibit "A-2".

[3]  A true and correct copy of the letter to Plaintiffs dated November 3, 2006 notifying them of the change in mortgage servicers is attached as Exhibit "A-3".

[4]  A true and correct copy of the Default Notice is attached as Exhibit "A-4".

[5]  A true and correct copy of the Notice of Acceleration is attached as Exhibit "A-5".

[6]  A true and correct copy of the Assignment of Note and Deed of Trust is attached as Exhibit "A-6".

[7]  A true and correct copy of notice sent to Plaintiffs informing them of the transfer of mortgage servicing to Bank of America which was marked "Return to Sender" and returned to Bank of America by the postal service is attached as Exhibit "A-7".

10. Bank of America as mortgage servicer on behalf of Deutsche has possession of the Note.

11. Plaintiffs have not cured the default under the Note and Security Instrument and Plaintiffs have not tendered payment of the outstanding balance on the Note subsequent to acceleration of the debt.

Further Affiant sayeth not.

SWORN AND SUBSCRIBED TO before me, the undersigned Notary Public, on this ___ day of April, 2012.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia A. Winick, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Sept 9 2014
Member, Pennsylvania Association of Notaries

Notary Public In and For
The Commonwealth of Pennsylvania

399724.2

THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION

# TEXAS HOME EQUITY NOTE
### (Fixed Rate - First Lien)

June 5, 2006        **Missouri City**        **Texas**
[Date]        [City]        [State]

**4402 RINGROSE DR, Missouri City, TX 77459**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. **$173,600.00** (this amount is called "Principal"), plus interest, to the order of the Lender.
The Lender is **New Century Mortgage Corporation**

. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.750** %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning **August 1, 2006**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **07/01/2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612**
or at a different place if required by the Note Holder.

1008289578

TEXAS HOME EQUITY NOTE (Fixed Rate-First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-8035(TX) (0311)    Form 3244.1 1/01
Page 1 of 4    (rev. 10/03)
VMP Mortgage Solutions (800)521-7291



^10 073295735 N 001 001

**EXHIBIT A-1**

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,243.70

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)
RICHARD HAASE                   -Borrower

_____ (Seal)
AUDREY HAASE                    -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

Pay to the order of, without recourse

New Century Mortgage Corporation

By:_____
   Steve Nagy
   V.P. Records Management

1008288578

HOME EQUITY 2000288576
23 PGS

United Title of Texas
GF No. 06-26665-402   DM

Return To:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

After Recording Return to
United Title of Texas
5177 Richmond Ave  Suite 400
Houston TX 77056

Prepared By:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

———————————[Space Above This Line For Recording Data]———————————

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
### (First Lien)

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

### NOTICE OF CONFIDENTIALITY RIGHTS:
If you are a natural person, you may remove or strike any of the following
information from this instrument before it is filed for record in the public records:
your social security number or your driver's license number.

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated   June 5, 2006
together with all Riders to this document.

(B) "Borrower" is  RICHARD HAASE and AUDREY HAASE

Borrower is the grantor under this Security Instrument.

2000288576

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien) Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044.1  1/01

VMP-600N(TX) (0411).01
Page 1 of 15

VMP Mortgage Solutions, Inc. (800)521-7291

**EXHIBIT A-2**

(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is Eldon L. Youngblood

, Trustee's address is

2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204

(E) "Note" means the promissory note signed by Borrower and dated   June 5, 2004
The Note states that Borrower owes Lender ONE HUNDRED SEVENTY-THREE THOUSAND SIX
HUNDRED AND 00/100                                                                  Dollars
(U.S. $ 173,600.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payment and to pay the debt in full not later than 07/01/2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Extension of Credit" means the debt evidenced by the Note, as defined by Section 50(a)(6), Article
XVI of the Texas Constitution and all the documents executed in connection with the debt.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check bar or applicable]:

☐ Texas Home Equity Condominium Rider          ☐ Other:
☒ Texas Home Equity Planned Unit Development Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

1008288378

Page 7 of 16                          Form 3044.1   1/01 (rev. 10/03)

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the

County                              of                          Fort Bend
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 6710-21-001-0010-907            which currently has the address of
4402 KINGROSE DR
Missouri City                                      (City), Texas 77489          [Street]
("Property Address");                                                           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

VMP-6135(TX) (0411).01                    Page 3 of 16            1008288578            44461   3/01 (rev. 10/03)

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

1009299579

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6025(TX)(0411)(5)    Page 5 of 13    Form 3044.1    1/01 (rev. 10/03)    1608288578

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower's actions shall constitute actual fraud under Section 50(a)(6)(C), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or

Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. Extension of Credit Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.

14. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be

deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6)(L), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution

whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply the obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

20. Hazardous Substances. As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a

44216(TX)  5/17/01                        Page 19 of 19                    Form 3044.1  9/01 (rev. 10/03)

Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

21. **Acceleration Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

22. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

24. Non-Recourse Liability. Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

1009208975

25. **Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

26. **No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

27. **Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

28. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

29. **Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

1005288678

Form 3044.1   14/1 ( rev. 18/03)

Page 18 of 19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

Printed Name: Richard Alan Haase          RICHARD HAASE                    (Seal)
              [Please Complete]                                            -Borrower

Printed Name: Audrey Haase                AUDREY HAASE                     (Seal)
              [Please Complete]                                            -Borrower

                                    (Seal)                                 (Seal)
                                   -Borrower                               -Borrower

                                    (Seal)                                 (Seal)
                                   -Borrower                               -Borrower

                                    (Seal)                                 (Seal)
                                   -Borrower                               -Borrower

STATE OF TEXAS
County of Fort Bend

Before me _____ Douglas A. McAninch _____ on this day personally appeared

Richard Haase & Audrey Haase

known to me (or proved to me on the oath of
or through _____ drivers' lic. _____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 5th day of June, 2006.

(Seal)

_____
Notary Public

DOUGLAS ALLEN McANINCH
Notary Public, State of Texas
My Commission Expires
November 22, 1986

My Commission Expires:

1009288576

# TEXAS HOME EQUITY
## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 5th                    day of
June,  2006           , and is incorporated into and shall be deemed to amend and supplement
the Security Instrument of the same date, given by the undersigned (the "Borrower") to secure Borrower's
Note to New Century Mortgage Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at 4402 BIRCHROSE DR, Missouri City, TX  77459

[Property Address]

The property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in covenants, conditions, and
restrictions filed in the Real Property records of the county in which the property is located (the
"Declaration"). The property is a part of a planned unit development described in the Declaration (the
"PUD"). The property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest, insofar as permitted by Section 50(a)(6)(H), Article XVI of
the Texas Constitution, "homestead" shall include the elements of the property described by this Rider.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards,
including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the property; and

1000208572

TEXAS HOME EQUITY PLANNED UNIT DEVELOPMENT RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-4237( TX) (0411) Form 3150-1-1-1  1/01
Page 1 of 3
VMP Mortgage Solutions, Inc. (800)521-7291

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the property, or to common areas and facilities of the PUD, any proceeds payable to Borrower shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by applicable law, may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

1008280575

Page 2 of 2                     Form 3150.44  1/ 01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)                 _____ (Seal)
RICHARD HAASE          -Borrower                AUDREY HAASE          -Borrower

_____ (Seal)                 _____ (Seal)
                       -Borrower                                      -Borrower

_____ (Seal)                 _____ (Seal)
                       -Borrower                                      -Borrower

_____ (Seal)                 _____ (Seal)
                       -Borrower                                      -Borrower

1008286379

Page 3 of 3

Form 3150 04 1/ 01

Exhibit "A"

LOT 1, IN BLOCK 1, OF FINAL PLAT OF PLANTATION CREEK, SECTION 2-A, A
SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED UNDER SLIDES(S) 1140/B OF THE PLAT RECORDS OF FORT BEND
COUNTY, TEXAS.

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2008 Jun 16 02:48 PM
CK $02.00
Dianne Wilson, Ph.D., COUNTY CLERK
FT BEND COUNTY TEXAS



**Countrywide**
HOME LOANS
P.O. Box 10229
Van Nuys CA 91410-0229

Send Correspondence to:
P.O. Box 5170
Simi Valley CA 93062-5170

Business Address:
450 American Street
Simi Valley CA 93065-6285

November 3, 2006

CGS23302307364
Richard Haase & Audrey Haase
4402 Ringrose Dr
Missouri City, TX 77459

Account No.: 073295735
Property Address:
4402 Ringrose Dr
Missouri City, TX 77459

**Welcome!** The servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from New Century Mortgage Corporation to Countrywide Home Loans, Inc.. The effective date of the transfer will be the date that your first payment will be due, to the new servicer, which will be December 01, 2006. Countrywide is one of the nation's largest independent home mortgage lenders, and we are looking forward to providing you with both superior customer service and an extensive network of mortgage services.

**NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS**

The transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

**YOUR PRESENT SERVICER:**

Your present servicer is New Century Mortgage Corporation. If you have any questions relating to the transfer of servicing from New Century Mortgage Corporation, call Customer Service, toll free, at 1-800-561-4567 between 8:00 a.m. and 5:00 p.m. Pacific Time on the following days: Monday through Friday.

**YOUR NEW SERVICER CONTACT AND PAYMENT REMITTANCE ADDRESS:**

Your new servicer will be Countrywide. The business address for Countrywide is: 450 American Street, Simi Valley, CA 93065-6285. The address to send correspondence is: P.O. Box 5170, Simi Valley, CA 93062-5170. The address to send your first payment is: P.O. Box 10334, Van Nuys, CA 91410-0334. The toll-free telephone number of Countrywide is 1-800-669-6607. If you have any questions relating to the transfer of servicing to your new servicer, call Countrywide Customer Service, toll-free, at 1-800-669-6607 between 8:00 a.m. and 5:00 p.m., Pacific Time, Monday through Friday. Calls may be monitored or recorded for quality purposes. Please write the Countrywide loan number on all checks and correspondence and have your loan number available when you call. Your complete loan file is being transferred to your new servicer.

**INFORMATION CONCERNING YOUR PAYMENTS AND OPTIONAL INSURANCE:**

The date that New Century Mortgage Corporation will stop accepting payments from you is November 1, 2006. The date that your new servicer, Countrywide, will start accepting payments from you is November 2, 2006. Send all payments on or after that date to Countrywide. Countrywide will send you new billing statements. If you have a payment due before you receive your new billing statement, write your Countrywide account number (073295735) on your check and mail it to Countrywide at the payment address shown above. Please note that your account information is subject to change to reflect disbursements that are made by, and payments that are due to, your prior lender.

If your previous servicer was automatically drafting/deducting your monthly payment from your bank account, please be advised that this service will be discontinued. Enclosed is an application to re-apply for automatic monthly drafting through Countrywide Home Loans, Inc.

The transfer of servicing rights may affect the terms of the continued availability of mortgage life, disability, accidental death insurance or any other type of optional insurance in the following manner; if you currently have optional insurance, we will continue to bill you for the same premium, at least initially. You do not need to take any action to maintain coverage until you receive notification from Countrywide indicating if there are any charges concerning the terms or continued availability of this insurance. If your current insurance cannot be continued by Countrywide, you will be offered other alternatives without interruption in your coverage. If you have any questions about optional insurance, please contact our affiliate, Countrywide Insurance Services, Inc. at 1-800-669-6856. Countrywide Insurance Services, Inc. has an array of high quality, affordable insurance products including homeowners, earthquake, flood, life, disability and fixed annuities products to help protect you and your home.

If the terms of your loan provide for an escrow account to pay taxes and/or insurance, Countrywide may elect to re-analyze the escrow payment amount and make any necessary adjustments. In compliance with the Real Estate Settlement Procedures Act (RESPA), Countrywide analyzes escrow accounts utilizing the aggregate method.

**This communication is from a debt collector.**
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.
**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

ACWLCK 5/17/2005

| PAYMENT INSTRUCTIONS | Account Number: 073295735-2 | Next Payment | $1,243.70 |
|---|---|---|---|
| * Make your check payable to Countrywide Home Loans. | Richard Haase 4402 Ringrose Dr | | |

Please update e-mail information on the reverse side of this coupon.

**EXHIBIT A-3**

November 3, 2006

```
CCS23302307364
Richard Haase & Audrey Haase
4402 Ringrose Dr
Missouri City, TX 77459
```

Account No.: 073295735
Property Address:
4402 Ringrose Dr
Missouri City, TX 77459

**Welcome!** The servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from New Century Mortgage Corporation to Countrywide Home Loans, Inc. The effective date of the transfer will be the date that your first payment will be due to the new servicer, which will be December 01, 2006. Countrywide is one of the nation's largest independent home mortgage lenders, and we are looking forward to providing you with both superior customer service and an extensive network of mortgage services.

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

The transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

## YOUR PRESENT SERVICER:

Your present servicer is New Century Mortgage Corporation. If you have any questions relating to the transfer of servicing from New Century Mortgage Corporation, call Customer Service, toll-free, at 1-800-561-4567 between 0:00 a.m. and 6:00 p.m. Pacific Time on the following days: Monday through Friday.

## YOUR NEW SERVICER CONTACT AND PAYMENT REMITTANCE ADDRESS:

Your new servicer will be Countrywide. The business address for Countrywide is: 450 American Street, Simi Valley, CA 93065-6285. The address to send correspondence is: P.O. Box 5170, Simi Valley, CA 93062-5170. The address to send your first payment is: P.O. Box 10334, Van Nuys, CA 91410-0334. The toll-free telephone number of Countrywide is 1-800-669-6607. If you have any questions relating to the transfer of servicing to your new servicer, call Countrywide Customer Service, toll-free, at 1-800-669-6607 between 6:00 a.m. and 6:00 p.m. Pacific Time, Monday through Friday. Calls may be monitored or recorded for quality purposes. Please write the Countrywide loan number on all checks and correspondence and have your loan number available when you call. Your complete loan file is being transferred to your new servicer.

## INFORMATION CONCERNING YOUR PAYMENTS AND OPTIONAL INSURANCE:

The date that New Century Mortgage Corporation will stop accepting payments from you is November 1, 2006. The date that your new servicer, Countrywide, will start accepting payments from you is November 2, 2006. Send all payments on or after that date to Countrywide. Countrywide will send you new billing statements. If you have a payment due before you receive your new billing statement, write your Countrywide account number (073295735) on your check and mail it to Countrywide at the payment address shown above. Please note that your account information is subject to change to reflect disbursements that are made by, and payments that are due to, your prior lender.

If your previous servicer was automatically drafting/deducting your monthly payment from your bank account, please be advised that this service will be discontinued. Enclosed is an application to re-apply for automatic monthly drafting through Countrywide Home Loans, Inc.

The transfer of servicing rights may affect the terms of or the continued availability of mortgage life, disability, accidental death insurance or any other type of optional insurance in the following manner. If you currently have optional insurance, we will continue to bill you for the same premium, at least initially. You do not need to take any action to maintain coverage until you receive notification from Countrywide indicating if there are any changes concerning the terms or continued availability of this insurance. If your current insurance cannot be continued by Countrywide, you will be offered other alternatives without interruption in your coverage. If you have any questions about optional insurance, please contact our affiliate, Countrywide Insurance Services, Inc. at 1-800-669-6656. Countrywide Insurance Services, Inc. has an array of high quality, affordable insurance products including homeowners, earthquake, flood, life, disability and fixed annuities products to help protect you and your home.

If the terms of your loan provide for an escrow account to pay taxes and/or insurance, Countrywide may elect to re-analyze the escrow payment amount and make any necessary adjustments in compliance with the Real Estate Settlement Procedures Act (RESPA). Countrywide analyzes escrow accounts utilizing the aggregate method.

*This communication is from a debt collector.*
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.
**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

ADVL_CX 8/07/2004

| | | |
|---|---|---|
| **PAYMENT INSTRUCTIONS** | Account Number: 073295735-2<br>Richard Haase<br>4402 Ringrose Dr | **Next Payment** $1,243.70 |

* Make your check payable to Countrywide Home Loans
* Write your account number on your check or money order
* Write in any additional amounts you are including. (If total is more than $5000, please send certified check.)
* Don't attach your check to the payment coupon
* Don't include correspondence
* Don't send cash

Please update in well information on the reverse side of this coupon.

| | |
|---|---|
| ADDL Amount<br>Apply Loan to 0702186735<br>$8000 10000 | **Additional Principal** |
| | **Additional Escrow** |
| | **Other** |

Countrywide
PO Box 10334
Van Nuys CA 91410-0334

|||||||||||||||||||||||||

073295735200000124370000000000



**HOME LOANS**

P.O. Box 650070
Dallas, TX 75265-0070

Send Correspondence to:
P.O. Box 5170, MS SV314B
Simi Valley, CA 93065

Send Payments to:
PO Box 650070
Dallas, TX 75265-0070

December 1, 2007

Richard Haase & Audrey Haase
4402 RINGROSE DR
MISSOURI CITY, TX 77459-2963

Account No.:           735

Property Address:
4402 Ringrose Dr
Missouri City, TX 77459-2963

Dear Richard Haase & Audrey Haase:

Countrywide Home Loans Servicing LP (hereinafter "Countrywide") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this letter is as follows:

| | | |
|---|---|---|
| Monthly Charges: | 11/01/2007 | $2,581.24 |
| Late Charges: | 11/01/2007 | $62.19 |
| Other Charges: | Uncollected Late Charges: | $684.09 |
| | Uncollected Costs: | $0.00 |
| | Partial Payment Balance: | ($0.00) |
| | **TOTAL DUE:** | **$3,327.52** |

You have the right to cure the default.  To cure the default, on or before January 2, 2008, Countrywide must receive the amount of $3,327.52 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before January 2, 2008.

The default will not be considered cured unless Countrywide receives "good funds" in the amount of $3,327.52 on or before January 2, 2008.  If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured.  No extension of time to cure will be granted due to a returned payment. Countrywide reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise.  For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before January 2, 2008, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, Countrywide and the Noteholder shall be entitled to collect all fees and costs incurred by Countrywide and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default.  Pursuant to your loan documents, Countrywide may, enter upon and conduct an inspection of your property.  The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant.  If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken.  The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.

If you are unable to cure the default on or before January 2, 2008, Countrywide wants you to be aware of various options that may be available to you through Countrywide to prevent a foreclosure sale of your property.  For example:

- **Repayment Plan:** It is possible that you may be eligible for some form of payment assistance through Countrywide. Our basic plan requires that Countrywide receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans are also available.

- **Loan Modification:** Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This

---

Please make your payment payable to us and mail with this coupon.
We may charge you a fee if any amount is returned or rejected by your financial institution, subject to applicable law.

Account Number    735-2

Richard Haase & Audrey Haase
4402 Ringrose Dr

Balance Due for charges listed above: $3,327.52 as of 12/01/2007.

Countrywide
PO BOX 650070
Dallas, TX 76266-0070

0732957352000000332752000332752

**EXHIBIT A-4**

foreclosure alt_____, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Countrywide even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Countrywide, you must contact us immediately. If you request assistance, Countrywide will need to evaluate whether that assistance will be extended to you. In the meantime, Countrywide will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by January 2, 2008 as outlined above will result in the acceleration of your debt.

Countrywide is acting as the Mortgage Servicer for Deutsche Bank (msac 2006-He6), which is the Owner and/or Mortgagee of the Note and Deed of Trust associated with your real estate loan. Countrywide, as Mortgage Loan Servicer, is representing Deutsche Bank (msac 2006-He6) whose address is: Loan Servicing, P.e. Box 7532, Van Nuys, CA, 91406-9996. The Mortgage Loan Servicer is authorized to represent Deutsche Bank (msac 2006-He6) by virtue of a servicing agreement. Pursuant to the servicing agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above-referenced loan. All notices, payments, correspondence, and other communications regarding the real estate loan should continue to be directed to Countrywide.

Time is of the essence. If you have any questions concerning this notice, please contact the Loan Counseling Center immediately at 1-800-669-0102.

Sincerely,

Loan Counseling Center



**Countrywide**
HOME LOANS
P.O. Box 5043
Temecula, CA 92539-5048

Send Payments To:
PO BOX 650070
Dallas, TX 75265-0070

Send Correspondence to:
PO Box 5170, MS SV-314B
Simi Valley, CA 93065

7313 8257 1472 5379 0693

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
W9O

Richard Haase & Audrey Haase
4492 RINGROSE DR
MISSOURI CITY, TX 77469-2983





**BARRETT DAFFIN F** **ER**
**TURNER & ENGEL, L.L.P.**
A Partnership Including Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Telephone: (972) 419-1163
Telecopier: (972) 386-7673

May 5, 2008

Certified Mail 7160 9668 9670 1743 4130
AUDREY HAASE
4402 RINGROSE DRIVE
MISSOURI CITY TX 77459

RE:  Mortgage Servicer:  COUNTRYWIDE HOME LOANS, INC.
     Loan No.:          735
     BDFTE No.:         Z03E0031402623

This law firm represents COUNTRYWIDE HOME LOANS, INC., the Mortgage Servicer, in its mortgage banking activities in the State of Texas. We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the collection of a debt associated with a Deed of Trust (the "Debt").

COUNTRYWIDE HOME LOANS, INC. is acting as the Mortgage Servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE ON BEHALF OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE6, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE6, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. COUNTRYWIDE HOME LOANS, INC., as Mortgage Servicer, is representing the Mortgagee, whose address is:

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE ON BEHALF OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE6, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE6
FTX-C-32
7105 CORPORATE
PLANO TX 75024

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosures of the property securing the above referenced loan.

This letter is formal notice of the following:

1.  Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt.

2.  The amount of the Debt as of the date of this notice, according to the records of the Mortgage Servicer, is $189,482.01. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write or call the Foreclosure Department of this firm at (972) 419-1163. Payment must be made in certified funds, cashier's check or money order(s).

3.  All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as provided by Texas law. You may obtain reinstatement figures by calling the Foreclosure Department of this firm at (972) 419-1163.

4.  All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.

**PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE-REFERENCED DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the Debt or any part thereof. If you don't dispute the Debt within that period, this firm will assume that the Debt is valid. If you do dispute the Debt by notifying this firm in writing, the firm will obtain and mail verification of the Debt to you. If within the same period, you request in writing the name and address of the original mortgagee, and if the original mortgagee is different from the current mortgagee, this firm will furnish you with that information.

The law does not require this firm to wait until the end of the thirty-day period before taking action to collect the Debt. If, however, you have requested verification of the Debt or the name and address of the original mortgagee within the time stated above, this firm will cease collection activities until such requested information has been mailed to you.

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, the Mortgage Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the Real Estate may be affected.

Sincerely,

Barrett Daffin Frappier Turner & Engel, L.L.P.

For Debt Associated
FTX07305 - 80701(0DLET001)

|||||||||| (barcode)
EQF20060031402623

**EXHIBIT A-5**

BARRETT DAFFIN F.      IER
TURNER & ENGEL, L.L.P.
A Partnership Including Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Telephone: (972) 419-1161
Telecopier: (972) 385-7673

May 5, 2008

Certified Mail 7160 9668 9670 1743 4123
RICHARD HAASE
4402 RINGROSE DRIVE
MISSOURI CITY TX 77459

RE:   Mortgage Servicer:     COUNTRYWIDE HOME LOANS, INC.
      Loan No.:              735
      BDFTE No.:             20080031402623

This law firm represents COUNTRYWIDE HOME LOANS, INC., the Mortgage Servicer, in its mortgage banking activities in the State of Texas. We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the collection of a debt associated with a Deed of Trust (the "Debt").

COUNTRYWIDE HOME LOANS, INC. is acting as the Mortgage Servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE ON BEHALF OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE6, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE6, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. COUNTRYWIDE HOME LOANS, INC., as Mortgage Servicer, is representing the Mortgagee, whose address is:

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE ON BEHALF OF MORGAN STANLEY ABS
CAPITAL I INC. TRUST 2006-HE6, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE6
c/o COUNTRYWIDE HOME LOANS, INC.
PTX-C-32
7105 CORPORATE
PLANO TX 75024

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

This letter is formal notice of the following:
1.    Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt.

2.    The amount of the Debt as of the date of this notice, according to the records of the Mortgage Servicer, is $160,482.01. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write or call the Foreclosure Department of this firm at (972) 419-1163. Payment must be made in certified funds, cashier's check or money order(s).

3.    All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as provided by Texas law. You may obtain reinstatement figures by calling the Foreclosure Department of this firm at (972) 419-1163.

4.    All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.

PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE-REFERENCED DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the Debt or any part thereof. If you don't dispute the Debt within that period, this firm will assume that the Debt is valid. If you do dispute the Debt by notifying this firm in writing, this firm will obtain and mail verification of the Debt to you. If within the same period, you request in writing the name and address of the original mortgagee, and if the original mortgagee is different from the current mortgagee, this firm will furnish you with that information.

The law does not require this firm to wait until the end of the thirty-day period before taking action to collect the Debt. If, however, you have requested verification of the Debt or the name and address of the original mortgagee within the time stated above, this firm will cease collection activities until such requested information has been mailed to you.

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, the Mortgage Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the Real Estate may be affected.

Sincerely,

Barrett Daffin Frappier Turner & Engel, L.L.P.

Fair Debt/Acceleration
BDFA1165.-215691[402/2009]

EQF20080031402623

|3

**ASSIGNMENT OF NOTE**
**AND DEED OF TRUST**

BDFTE No.: 20080031402623
Investor/Loan Type: EQUITY

Date of Assignment:      Effective April 23, 2008
Assignor:                NEW CENTURY MORTGAGE CORPORATION

Assignee:                DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE ON BEHALF
                         OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE6, MORTGAGE
                         PASS-THROUGH CERTIFICATES, SERIES 2006-HE6

Assignee's Mailing Address:   1762 EAST ST. ANDREW PLACE
(including county)            SANTA ANA, CA 94705

NOTE and DEED OF TRUST--

Maker/Grantor:           RICHARD HAASE
                         AUDREY HAASE
Date:                    June 05, 2006
Original Amount:         $ 173,600.00
Payee:                   NEW CENTURY MORTGAGE CORPORATION

Trustee:                 ELDON L. YOUNGBLOOD

Recording Information:   CLERK'S FILE NO. 2006070606
(including county)       (FORT BEND)

Property (including any improvements) Subject to Deed of Trust:

LOT 1, IN BLOCK 1, OF FINAL PLAT OF PLANTATION CREEK, SECTION 2-A, A SUBDIVISION IN FORT
BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER SLIDES(S)
1140/B OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

After Recording Return To:
Barrett Daffin Frappier Turner and Engel, L.L.P.
15000 Surveyor Blvd., Suite 100
Addison, TX 75001
Attn: NDEx Title Services, L.L.C.

*ASSG20080031402
ASSG20080031402623

ASGNDOT.rpt - (04/24/08) / Ver-04

Page 1 of 2

EXHIBIT A-6

ASSIGNMENT OF NOTE
AND DEED OF TRUST

BDFTE No.: 20080031402623
Investor/Loan Type: EQUITY

WHEREAS, on the date of assignment indicated above, for value received, Holder of the Note and Deed of Trust transferred and assigned each to Assignee, and warranted that the lien was valid against the property in the priority indicated; and

WHEREAS, the Holder of the Note and Deed of Trust and the Assignee desire to evidence and memorialize such transfer and assignment and warranty by this document;

NOW THEREFORE, for value received Holder of the Note and Deed of Trust does hereby evidence and memorialize its transfer and assignment of the Note and Deed of Trust to Assignee on the date of assignment indicated above.

When the context requires, singular nouns and pronouns include the plural.

NEW CENTURY MORTGAGE CORPORATION

BY: _____

ITS: _____ MARK BISHOP, 1ST VICE PRESIDENT

TEXAS

State of _____ §
County of COLLIN §

CORPORATE ACKNOWLEDGMENT

Before me, the undersigned Notary Public, on this day personally appeared _____ MARK BISHOP, _____, who is the 1ST VICE PRESIDENT _____ of NEW CENTURY MORTGAGE CORPORATION, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of JUN – 4 2008 , 2008.

My Commission Expires:

_____

_____
Notary Public Signature

Teresa Bess
_____
Printed Name of Notary Public

TERESA L BESS
My Commission Expires
March 5, 2011

PREPARED BY AND AFTER RECORDING RETURN TO: BDFTE, L.L.P.,
15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001

ASONDOT.tpt – (04/24/08) / Ver-05

Page 2 of 2

05/27/2011 004246   584 Jeremie Williams Customer Conta



1 of 4

**Bank of America**

Home Loans

P. O. Box 941633
Simi Valley, CA  93094-1633

Doc ID: BANACOM1

0087512    01 AV D332 "AUTO  T 0 4430 77459-295302  -C01-P07 991-1

RICHARD HAASE
4402 RINGROSE DR
MISSOURI CITY     TX 77459-2983

Account No.: 073295735

FIRST-CLASS
MAIL
U.S. POSTAGE
**PAID**
BANK OF
AMERICA

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

We want to let you know that effective July 1, 2011, the servicing
subsidiary—BAC Home Loans Servicing, LP, will transfer to our p
N.A. Based upon our records as of April 23, 2011, your home lo
by this servicing transfer.

**WHAT THIS MEANS FOR YOU**

- If you pay by check on or after July 1, 2011, please make c
  N.A."
- Effective July 1, 2011, your monthly statements will show "
  servicer.

*Return to Sender*

*Refused*

*In Litigation.*

NIXIE      779   DE 1       0Q 05/25/11
                                        3ACS1-
RETURN TO SENDER
REFUSED
UNABLE TO FORWARD

BC: 93094159333        *0393-00202-25-08

93094C1603        [barcode]

**EXHIBIT A-7**